and then if time permits, dismissal of the Section 1983 suspension claim for sending the text. Addressing summary judgment first, I'd briefly like to mention the standard, which on summary judgment, this court takes all facts and reasonable inferences in the light most favorable to the land. And I want to emphasize that even though it's well known because the defendant's answer brief didn't do that. Instead, the answer brief presents a view of the facts that is in the light most favorable to the defense. For example, if Grundy says he gave Lam an order, Lam says, no, he didn't give me that order. This court for summary judgment must assume Lam is telling the truth and Grundy is lying. This is important because the defense never really grapples with that in their answer brief. Turning to the specific issues, this court should reverse summary judgment for Dunlap on the Section 1983 termination claim. In this court, to follow Thomas and Medlock, an application of Thomas and Medlock shows that summary judgment for Dunlap was erroneous. Those cases hold that if the defendant mentions the protected activity as a basis for the termination, it creates a question of fact as to whether the protected act was a cause of the termination. This is dissensible because if the defendant says it, you can take them at their word that that was what caused the termination. Mr. Davis, may I ask you, all of the issues in Garcetti-Hickering were briefed, right? All of the elements? Yes, they were briefed originally in the response as alternate basis for affirmance and then we addressed them in the report. Okay, well, I'm trying to understand why this text message, which is the subject of, it would seem to be the first four issues, why that's protected speech at all? And I'd like your best argument, please, for why we should deem that language, that private text from a private phone to an individual who's not even in the office, why we should deem that to be protected speech? Well, under this court- And let me be clear. I was not as clear as I wanted to be. Why we should deem that to be a matter of public concern, that really was my focus and I apologize for that. Certainly, Your Honor, and I think if you look at the Bass decision from this court and Devon in the Supreme Court, and Bass, this court said, even if you're privately expressing support for political candidate, you don't come out in public, you don't write letters to the editor, you're just telling people you support a particular candidate for office, that is still a matter of public concern because you are trying to influence people and their perception of the candidates. And then in Devon, the Supreme Court case, if a teacher went to the principal, privately expressed concerns about desegregation efforts in the school, again, didn't make it public, didn't go out to the press, but privately expressed those. And both in the Bass case, this court said that's still a matter of public concern because you're discussing a matter of public concern. But- Go ahead, please. I'm sorry. And the same in Devon. They said, you know, look, even though they went to the principal privately, you're still discussing a matter of public concern. And that's really what's going on here. Issues of racism, of unprofessionalism in the sheriff's office are certainly matters of public concern, things people would be concerned about. The fact that they're being expressed privately to another person doesn't change that. And let me stop you there. One can accept the premise that issues of racism in law enforcement circles are matters of public concern, but I don't think our case law stops there, does it? Our case law requires that, in fact, the speaker have the intention of having this be aimed at some other broader purpose than personal griping over the fact that he doesn't like racism in his environment. In other words, it's not just the subject matter. One can say in the abstract that the subject matter is a public concern, but that doesn't mean necessarily that the speech in question, which uses one word, racism, comma, and talks about a bunch of other stuff, that that speech itself relates to a matter of public concern. And so I want you to address that notion that, one, it's more than the subject matter. It has to be aimed and calculated at some broader purpose, and that has to be the intent of the speaker, right? I think that's correct. And I would look at the Wren case out of this court, where the court said you can have complaints about your work environment, and those still can be a matter of public concern, again, if it's aimed not at your own condition, but the conditions of the workplace. There was complaints that a principal was sexually harassing other teachers and students. And this court said that's a matter of public concern. Here, Mr. Lamb was not complaining about racism directed at himself. He was complaining at racism directed at the public and at other employees. And he testified, when I sent this message to Chief Thomas, I was doing it because I was going to seek guidance from him. I was expressing my concerns with these things in the sheriff's office. I was seeking guidance from him on that. And so if you look, he wasn't seeking to serve just his own purpose. He was seeking, at least as he expressed it, and as this court, I think, has to accept his explanation on summary judgment, he was seeking guidance from Thomas as to how he could better or best address these issues. So I think he can't. I wonder about your understanding of our summary judgment standard. Why do we have to accept his explanation for his subjective understanding of what he was doing? I mean, we have to infer from this language, and the language talks about a poker night, and it talks about, uses one word, racism. It seems to me one has to be able to reasonably glean from that that there is some intent to do something. His ex post explanation for what he was doing, subjective as it is, is not something that our standard requires us to accept. And if you believe that I'm wrong on that, then give me a case that tells me that we need to do that. Well, Your Honor, I don't have a specific case on that. I do think that you, if it's ambiguous as to what his goal was, and I think it is here, you would look, I think, at the broader explanation for his conduct. I think this court has looked at the broader context in which comments were made. But he did say more than just racism. He said it was a mistake coming to work here. He mentioned lack of professionalism. He mentioned good old boy network. So I think he is expressing concerns about what's going on in the sheriff's office. True, and don't those contextual factors that you just described suggest he's talking about his own personal circumstances? I mean, good old boy network, they're not professional, it was a mistake for me to come here. That sounds like him talking about, as any employee would, boy, I wish I hadn't accepted this job. I think he's talking about concerns with the job. I think that those concerns with the job reflect concerns with how the sheriff's office is being run and what's going on there. And that is a broader measure of public concern. The public's going to be concerned about what's going on in the sheriff's office, and he's sharing it with another friend who's also in law enforcement. So he's sharing his concerns with what is going on in the office, and I think that makes it a matter of public concern because he's not addressing simply things that are happening to him, which was the case in the Davis decision where the woman was complaining about sexual harassment of herself, and she wanted that to stop. Instead, he's expressing concerns with how the sheriff's office is being operated as a whole, not directed at him. I think the reference to poker night, you have to take that in the context of how people often talk about these things. It's not just when you go to the press. It's not just when you go to letters to the editor that people talk about matters of public concern. People talk about matters of public concern in backyard barbecues, in family dinners, in lunch meetings with friends, and it's intermixed with conversations about other topics. You're not just going to go with a friend and talk about the election. You're going to talk about how their family's doing. You're going to talk about how work's going, and you're also going to talk about the election. You have to put it in the context of how ordinary people talk about matters of public concern, and that... I'm sorry. Could I interrupt just because I've got a question back on something you said a minute ago. Would your answer to Judge Holmes' questions be different, do you think, if he had made his statement or his text, if he had sent the text to someone not in law enforcement, to his neighbor, just to personal friends? Does that context matter? Again, it could because it's part of the broader context. If it's another person in Montrose County or Montrose in the city, it might not matter because again, he's expressing it to a fellow member of the Montrose community about what's going on in Montrose. Here, Chief Thomas was in... Delta. He's the police chief of Delta, Mr. Thomas. And where is Delta? What's the relationship? Delta is right next to Montrose. They're both right next to each other. They work together. In the county? Yes. Okay. So those counties are right next to each other. They're bordering counties, and they cooperate quite a bit with each other. And so it's a member of law enforcement that he would be communicating, working with, and somebody he'd worked with in the past. So it's natural that he would express his concerns about law enforcement in Montrose County with Chief Thomas, who's both his friend and a member of the law enforcement community. And to transition to talk about the text a little bit, just briefly to touch on the Title 7 issue, again, his expression of racism, even if it's not a matter of public concern in the Section 1983 context, is a protected activity under Title 7. Now, we think it's both. And again, I would direct the court to the persuasive pain decision, which says if the communication is ambiguous as to whether you're addressing societal racism or racism in work, you look at the explanation the employee gave and whether the employer understood it. And here, Lamb explained his text in that he was referring to racism directed at and in front of minority employees. He explained that to the investigating officer before he was disciplined and reported up so the employer understood what he was getting at when he made that. In the Title 7 context, don't you have a problem with, or do you have a problem with the fact that he made this, his comment to someone in a text who was not, had no connection with his employer? Wasn't an employee, wasn't a former employee in the Title 7 context? Is it still protected even though it was just a text, a random text to a non-employee? Yes, Your Honor. People talk about their employment every day with their friends and may say things about the hostile work environment. Why does that make it protected? The least persuasive case law from other circuits and guidance from the EEOC says the complaint can be made by anyone to anyone as long as it gets back to the employer. Have we said that in this circuit? Here it got back to the employer. I don't think this court said that, I believe the Sixth Circuit said it and the EEOC said that it can be made. And they, the Sixth Circuit was following EEOC guidance. So as long as it gets back to the employer and the employer is acting on it, it's still a protected activity. And with that, I would like to preserve the rest of my time if I may. Sure. Counsel. May I please the court? This is Jeff Driscoll appearing on behalf of Defendants Appellees Montrose County Sheriff's under Sheriff Adam Murdy and Deputy Jason Grundy. There are two orders at issue before the court today, the July 3rd, 2019 summary judgment order in which all three of Mr. Lamb's claims were dismissed in the March 6th, 2018 motion to dismiss order, which addressed Mr. Lamb's First Amendment retaliation claim and narrowed the scope of that claim. Both orders should be affirmed on the basis given by the district court in this matter. And I guess I'll address, first of all, the topic of discussion that the honors just had with Mr. Davis in reference to whether or not Mr. Lamb's text message was a matter of public concern. And in this circuit, matters of public concern are construed narrowly, and that's referenced in the Leverington case. And this circuit grappled with a matter of public concern recently in 2019 in the Butler case in which the court held that speech aimed at airing grievances of a purely personal nature is generally not on a matter of public concern. What if it is? What if the communication is designed in part to air personal grievance, and it's in part to air a grievance of a more public nature? Well, I think you have to look at the overall context and form of the speech and then determine which it is, whether or not it was intending to address a matter of public concern or whether or not it really was intended to address a personal matter, a private matter. How do you, Mr. Driscoll, how do you reconcile that with our 2014 opinion in Eisenhower v. Weber County, where you had a secretary for a judge who was complaining of sexual harassment targeted only to her, and yet our panel, in a unanimous opinion, concluded that even though it had two purposes, dual purposes, and she was primarily concerned with her own sexual harassment, the nature of sexual harassment perpetrated by a judge, by definition, had a public concern. And so in Eisenhower v. Weber County, we didn't pierce which one to pigeonhole her complaint into. So how do you reconcile your characterization with Eisenhower? I guess I would just fall back on the more recent pronouncement in Butler, which addressed this in the context of an individual talking about personnel matters while testifying at a civil trial. And in that context, it was determined that the individual's speech was not on the matter of public concern, and therefore it was not protected. Thank you. Mr. Driscoll, in your brief, I think you made some reference to the possibility of harmless error. If we were to uphold the District Court summary judgment rulings, that any error associated with the motion to dismiss might be deemed harmless. Do I recall that correctly? You do, Your Honor. And what authority do you rely upon for that line of reasoning? And I guess I probably would have framed it more in rendering the issue moot. And one of those is the issue of, I think it was, well, Your Honor, just a minute. Well, I apologize, Your Honor. I'm not finding my reference to that. Okay. But would you mean moot in the sense that there would be no relief that would be available on those claims? Or, I mean, mootness is used in a technical, are you using it in a technical sense, or I'm trying to understand. Because I mean, you could adopt the view that no matter whether there was error or not, it doesn't really matter because of the summary judgment rulings. So I'm just trying to understand what box you're putting in, and I apologize. Well, the motion to dismiss only addressed the First Amendment retaliation claim, and it narrowed the scope of that. And so the summary judgment order, to the extent that it would render any issues moot, would relate to the First Amendment retaliation claim. And the judge concluded that under that claim, the First Amendment retaliation claim did not satisfy all of the Garcetti-Pickering elements. And to the extent that the court finds that it was error for the judge to narrow the scope of that claim on the motion to dismiss, that would be covered or encompassed in the judge's reasoning on the motion for summary judgment. Thank you. Thank you. So I would like to address, I guess, the motion. Well, let me back up. Let me address the motion to dismiss first. So as I just indicated, that order narrowed the scope of the First Amendment retaliation claim. And the court did that because Mr. Lamb didn't sufficiently allege retaliation. And so if you look at the… Can you first address, it seemed to me that the court sort of took off on its own on that dismissal order. And your motion to dismiss was pretty narrowly focused on whether these various defendants had authority to act on the discipline or on the termination. And the court then, on its own, decided to examine the complaint and look at the allegations with respect to each individual defendant. Putting that aside, I note, for instance, on this defendant Mundy, he dismissed that claim regarding Mundy with respect to the termination. And yet the complaint specifically alleges that Mundy made the recommendation to terminate Lamb's employment. Why wasn't that a sufficient allegation? And did the court overlook that? And why shouldn't Mundy be brought back in? The claim is a retaliation claim. And so what the court found is that Mr. Lamb did not sufficiently allege retaliation by under Sheriff Murty. And so if you go through the complaint, and if you look at every paragraph in which retaliation is mentioned, it's mentioned in paragraphs 1, 11, 75, 82, 93, 123, and 124. Well, counsel, I understand that. But we know that Mundy knew that one of the basis for the recommendation to terminate Mr. Lamb was the very first disciplinary incident, which involved this text. And he nevertheless included, I presume, that text in his letter as one of the three basis for terminating Mr. Lamb. How is that not sufficient, presuming that the first disciplinary incident was retaliatory for now? Well, the allegations... Why can't we put all those claims together? What more does he need to say as far as Mundy's involvement? What he failed to say is that under Sheriff Murty's involvement was done in retaliation. What under Sheriff did is make a recommendation of termination. Based on an incident including the text, and discipline including that text. On the text, and on multiple instances of insubordination, disobeying general orders, and not complying with Montrose County general orders. But again, I think what the district court was focusing on is whether or not, because this is a retaliation claim, whether or not Mr. Lamb alleged retaliation. And you won't find anywhere in the complaint where Mr. Lamb alleged that under Sheriff Murty took the actions he did in retaliation for anything that Mr. Lamb did. The only... I'm sorry, you go ahead. I didn't mean to talk over you. Okay, the only two instances in which Mr. Lamb made that connection was in paragraph 82 in which he alleged that Deputy Grundy's write up in June of 2015 was made in retaliation for Lamb's reporting of Deputy Collins' racist comments. It seems to me, Mr. Driscoll, that you're pigeonholing everything. Now, in a way that differs a little bit from what Judge Moore did. On page five of his order, Judge Moore specifically acknowledged what Judge Moritz is commenting about. And that is, he says, the complaint further alleges... Dunlap, Murty, and Halsey relied upon the recommendation of Grundy. The complaint further alleges that Dunlap personally approved the plaintiff's termination. Nonetheless, in response to the motion to dismiss, plaintiff didn't rely on the termination as a basis for arguing that they retaliated. Obviously, if the text to the police chief in Delta County was protected, and if that was one of the three components that triggered Sheriff Dunlap's termination, obviously there would be a correlation, retaliation for a protected activity. I mean, that's syllogism. What Judge Moore was relying on is, to go back to Judge Moritz's question, is he seems to be acknowledging, okay, yes, this is a 12B6 motion. And yes, the plaintiff, you have alleged that Murty and Grundy both influenced Sheriff Dunlap's termination. And yes, Mr. Driscoll had argued the motion to dismiss, not even questioning that. But I'm going to look at, even though you've alleged that in the complaint, and even though it's obvious, and he acknowledges that Murty and Grundy had influenced the termination, and didn't make the argument that you're making, that there was no retaliation in the first place. Otherwise, there would be no summary judgment. The whole case would have gone away on the 1983 retaliation claim. But unlike Judge Moritz, I'm struggling a little bit to understand, from what Judge Moore said on page five, why he dismissed the retaliation claim against Murty and Grundy with regard to the termination. Well, again, I just go back to looking at the specific allegations in which Mr. Lamb made the connection between their conduct and actually saying that this was done in retaliation. And you only have two instances of that being done, and that being done in reference to Deputy Grundy in paragraph 82, and then in paragraphs 123 and 124. He talks about the sheriff's office employees retaliating, but then he also alleges in paragraphs 90 and 99 that only Sheriff Dunlap has the authority to terminate. And so I believe that's why Judge Moore restricted the termination element to Sheriff Dunlap only. So was it because Sheriff Dunlap is the decision maker in that situation? Correct. He's the only one that had final decision-making authority. The others could make recommendations, but it was only Sheriff Dunlap that could terminate it. Did Judge Moore ever say that? If you remember. In other words, basically a cat's paw theory. I don't remember the phrase cat's paw theory ever being mentioned in Judge Moore's order. With the time remaining, I don't know that I would. I believe that he referenced that Sheriff Dunlap is the only one that had termination authority, but while we're sitting here, I can't put my finger on it. I apologize. No, that's okay. No apologies, David. Thank you. So I guess in the time that I have remaining, I would just address the Title VII in Colorado Anti-Discrimination Act retaliation claims. Mr. Lamb's not challenging that those claims should have been construed together and that it was not error for Judge Moore to exercise supplemental jurisdiction over the Colorado State claim in conjunction with the Title VII claim. We would ask that court to adopt that view as well. I think that Judge Moore laid out pretty clearly why the claim, why this incident does not satisfy the McDonald-Ductus test, why a prima facie case of discrimination was not made, that they had legitimate reasons for terminating Mr. Lamb, and that those reasons were not pretext. So again, we believe that Judge Moore correctly ruled on both the motion to dismiss and on the summary judgment order, and we're asking this court to affirm those decisions. Thank you, Mr. Judge. Appreciate your argument. Thank you, sir. Counsel. Counsel. To briefly address the dismissal issue. It was, I believe, the defense that argued only Dunlap had authority to terminate, and I believe the district court recognized this court's decision in Wolf that even if the other defendants didn't have the authority to terminate their recommendation, leading to a retaliatory determination could establish a section 1983 violation. So those claims, I believe, were adequately. Okay. Thank you. Thank you. Thank you. Does that get you there? Counsel, does that get you there on, I get you there on Grundy, but does it also get you there on trying to think of it? Yeah. Yeah. Yes, your honor. Because we, I'm sorry, I get you there on Merti because he wrote the letter, but what about Grundy? Disappointed. With Grundy. I believe we alleged that. Um, Both of them made recommendations. I think the district court even. Acknowledged that. So I think we're there on the. Dismissal. And then just briefly on a moment. I see I'm out of time. I apologize. Thank you for considering and arguments. We'd ask you to reverse. Judge Moritz. Did you have further follow-up? That's all right. That's that answers my question. All right. Thank you. Counsel case is submitted. Appreciate your argument.